IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REX HARTLEY, #133711, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:03-CV-1229-WKW |
| ) | [WO] |
| ) | |
| GWENDOLYN MOSLEY, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Rex Hartley ["Hartley"], a state inmate, contends that defendant Mosley denied him access to the courts during his confinement in the Restricted Privilege Dorm the Easterling Correctional Facility ["Easterling"] from December 4, 2003 until January 27, 2004.[1]  Hartley seeks physical access to the law library at Easterling anytime he is confined in the Restricted Privilege Dorm.

The defendant filed a special report and supporting evidentiary materials addressing Hartley's claim for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of March 10, 2004 - Court Doc. No. 12*.  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Hartley's response in opposition to the motion, the court concludes

---

[1] The Restricted Privilege Dorm is likewise known as the "Hot Dorm" and these designations are used by the parties interchangeably throughout their pleadings.

that the defendant's motion for summary judgment is due to be granted.

## I.  FACTS

On November 30, 2003, officer James Hamilton lodged a behavior citation against Hartley for violation of Rule #64, possession of contraband.  The contraband confiscated from Hartley consisted of a parlay board which is utilized for gambling purposes.  Officer Lewis Hulett served as the investigating officer and determined that Hartley had committed the offense as charged in the citation.  The sanctions imposed upon Hartley for this citation included loss of telephone, canteen and visiting privileges for forty-five (45) days and assignment to the "Hot Dorm" for forty-five (45) days.  Hartley remained confined in the "Hot Dorm" from December 4, 2003 until January 27, 2004 when correctional officials released him into the general population at Easterling. *Plaintiff's March 24, 2004 Response to the Special Report - Court Doc. No. 14* at 2.  Hartley continued confinement in the prison's general population from January 27, 2004 until being "reassigned to the restricted privilege dorm" on March 4, 2005.  *Court Doc. No. 15* at 1.

Hartley contends that the restrictions placed on inmates in the "Hot Dorm" denied him access to the courts as these restrictions limited his ability to proceed in various state and federal lawsuits.  In support of this argument, Hartley asserts that a civil complaint filed with the Circuit Court of Montgomery County, Alabama in 2003 challenging the lack of covered walkways at Easterling, *see Hartley v. Mosley, et al.*, CV-2003-3345, suffered dismissal due to his failure to cite legal authority in support of the complaint.  Hartley

maintains that his failure to provide supporting legal authority resulted from his confinement in the Restricted Privilege Dorm because during such confinement the defendant denied him physical access to the prison's law library.

Defendant Mosley denies she deprived Hartley of access to the courts and, instead, maintains that Hartley received adequate access to the law library at Easterling to pursue his claims before the state and federal courts. Defendant Mosley explains as follows:

> Dorm 6A (the [R]estricted Privilege Dorm or "Hot Dorm") is not a Segregation Unit but is of a dormitory design as are all of our Population Dorms. Inmates in the Restricted Privilege Dorm have been placed there due to disciplinary measures which have removed their privileges. Grouping these inmates together into a single dorm enables our institution to more effectively manage those inmates. Inmates assigned to the "Hot Dorm" receive the same necessities as population inmates. They are escorted as a group to pill call for medication and to the dining hall for receipt of their meals. They may exercise on their own exercise yard. They are not allowed to mingle with other inmates who have been assigned to other dorms and who have not lost their privileges. . . .
>
> Inmates assigned to the "Hot Dorm" do not have physical access to the Law Library Building. Access to the services which the library offers is available upon request. Our Law Library Officer and inmate library clerks visit the Restricted Privilege Dorm twice per week to issue requested legal forms/materials, reference books, and legal kits (paper, pen, and envelopes), and [the Law Library Officer] also provides notary service to requesting inmates. Inmates in the "Hot Dorm" may receive up to four legal reference books per week which they may keep and utilize until they are returned to the Law Library Officer.

*Defendant's Exhibit A - January 16, 2004 Affidavit of Gwendolyn Mosley* at 1-2.

## II.  STANDARD OF REVIEW

In order to survive the defendant's properly supported motion for summary judgment, Hartley is required to produce some evidence which would be admissible at trial supporting his claim of a constitutional violation.  Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  To meet the aforementioned standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

To demonstrate a genuine issue, the party opposing summary judgment "must do

more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 322; *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Hartley has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

The law is well settled that prison inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343

5

(1996), the Supreme Court clarified and limited the right to assistance created in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library or legal assistance program. *Lewis*, 518 U.S. at 349. In identifying the right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***. . . . [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 350-351 (emphasis in original) (citations omitted). The Court further determined that *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court. . . . To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id.* at 354 (emphasis in original).

The Court likewise rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Id.* at 349. Moreover, *Lewis* emphasizes that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement

6

before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Id*. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Lewis*, 518 U.S. at 363.

A review of the record demonstrates that Hartley has failed to allege any shortcomings attendant to his confinement in the Restricted Privilege Dorm which resulted

7

in his suffering the requisite "actual injury" to establish a constitutional violation. Initially, the court finds that Hartley's reliance on the dismissal of his 2003 state case challenging the lack of covered walkways as cruel and unusual punishment does not establish the actual injury requirement because such case did not involve Hartley's ability to file a nonfrivolous legal claim. Specifically, the trial court dismissed the case because Hartley's complaint failed to state a claim which warranted relief, as compelling a prisoner to walk in inclement weather did not constitute a violation of the Eighth Amendment. *See Attachment to Court Doc. No. 24 - January 24, 2006 Order of the Circuit Court of Montgomery County, Alabama*. Although the state court noted Hartley's failure to cite authority in support of his claim, the court did not base its dismissal of the case on such failure; rather, the court rejected the claim because Hartley failed to allege a violation of the Constitution. As the Court observed in *Lewis*, correctional officials are not obligated to "enable the prisoner . . . to ***litigate effectively*** once in court." 518 U.S. at 354. Moreover, despite exhaustive research, this court has been unable to locate any legal authority which supports the claim litigated by Hartley in his state civil case. Thus, Hartley's lack of ability to conduct legal research via physical access to the law library cannot be said to have been fatal to the claim presented to the state court.

Additionally, it is clear that the restrictions about which Hartley complains did not deny him "'a reasonably adequate opportunity'" to present claims to either the state or federal courts, "the [touchstone] right vindicated by *Bounds*." *Lewis*, 518 U.S. at 351.

Although correctional officials denied Hartley physical access to the law library during his term of confinement in the Restricted Privilege Dorm, the pleadings and evidentiary materials submitted by the parties indicate that Hartley, at all times while housed in such dorm, was allowed access to legal materials and reference books acquired from the prison law library. *See Defendant's Exhibit A - January 16, 2004 Affidavit of Gwendolyn Mosley* at 2-3; *Plaintiff's Complaint* at 4.  It is likewise undisputed that Hartley gained his release from the Restricted Privilege Dorm on January 27, 2004 and was thereafter allowed physical access to the prison law library during his confinement in the general population – a period of time which constituted, at the very least, over thirteen (13) months of the time during which his state civil case and this cause of action remained pending.[1] Consequently, Hartley attained the precise access sought in the instant complaint while assigned to the prison's general population and, therefore, he could have conducted the alleged necessary research during this period of time.  Furthermore, a review of the record in this case demonstrates that Hartley filed both essential and discretionary pleadings in this case including the complaint, a response in opposition to the special report, a motion to supplement, affidavits in support of the response and a motion to compel.  The record also establishes that Hartley undertook some of these actions while confined in the Restricted Privilege Dorm.

---

[1] As previously noted, Hartley acknowledges his confinement in the general population at Easterling from January 27, 2004 until March 4, 2005.

Under the circumstances of this case, the court concludes that the restrictions imposed upon Hartley during his confinement in the Restrictive Privilege Dorm/"Hot Dorm" for a limited period of time did not unconstitutionally infringe on his capability to present claims to this court, other federal courts or the state courts. Over the course of his court proceedings, it is clear that defendant Mosley provided Hartley "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds*, 430 U.S. at 825. The record is likewise devoid of any indication of ultimate prejudice or disadvantage which directly resulted from the restrictions about which Hartley complains. Summary judgment is therefore due to be granted in favor of the defendant.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be granted.

2. Judgment be GRANTED in favor of the defendant.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before May 15, 2006 the parties may file objections to the

Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 2nd day of May, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE